Alex Chan (SBN 278805)
DEVLIN LAW FIRM LLC
16219 Flamstead Drive
Hacienda Heights, CA 91745
Telephone: (646) 331-0604
Facsimile: (302) 353–4251
achan@devlinlawfirm.com

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELL SEMICONDUCTOR, LLC<br><br>Plaintiff,<br><br>v.<br><br>KIOXIA AMERICA, INC. AND KIOXIA CORPORATION<br><br>Defendants. | Case No. _____<br><br>**ORIGINAL COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

ORIGINAL COMPLAINT

Plaintiff Bell Semiconductor, LLC ("Bell Semiconductor" or "Plaintiff") brings this Complaint against Defendants Kioxia America, Inc. ("Kioxia America") and Kioxia Corporation ("Kioxia Japan" and, collectively with Kioxia America, "Kioxia") for infringement of U.S. Patent Nos. 8,049,340[1] and 8,288,269.[2]  Plaintiff, on personal knowledge of its own acts, and on information and belief as to all others based on investigation, alleges as follows:

## SUMMARY OF THE ACTION

1. This is a patent infringement suit relating to Kioxia's unauthorized and unlicensed use of the Asserted Patents. The semiconductor packaging technology claimed in the Asserted Patents is used by Kioxia in the production of one or more of its semiconductor chips and packages, including the Kioxia TC58NC1132GTC and TOSHIBA TC58NC1133GTC ("Kioxia Accused Products").

2. Bell Semiconductor brings this action to put a stop to Kioxia's unauthorized and unlicensed use of the inventions claimed in the Asserted Patents.

## THE PARTIES

3. Plaintiff Bell Semiconductor is a limited liability company organized under the laws of the State of Delaware with a place of business at One West Broad Street, Suite 901, Bethlehem, PA 18018.

4. Bell Semiconductor stems from a long pedigree that began at Bell Labs. Bell Labs sprung out of the Bell System as a research and development laboratory, and eventually became known as one of America's greatest technology incubators. Bell Labs employees invented the transistor in 1947 in Murray Hill, New Jersey. It was widely considered one of the most important technological breakthroughs of the time, earning the inventors the Nobel Prize in Physics. Bell Labs made the first commercial transistors at a plant in Allentown, Pennsylvania. For decades, Bell Labs

---

[1] "'340 patent".
[2] "'269 patent".  The '340 patent and the '269 patent are each individually an "Asserted Patent" and are collectively the "Asserted Patents".

licensed its transistor patents to companies throughout the world, creating a technological boom that led to the use of transistors in the semiconductor devices prevalent in most electronic devices today.

5. Bell Semiconductor, a successor to Bell Labs' pioneering efforts, owns over 1,900 worldwide patents and applications, approximately 1,500 of which are active United States patents. This patent portfolio of semiconductor–related inventions was developed over many years by some of the world's leading semiconductor companies, including Bell Labs, Lucent Technologies, Agere Systems, and LSI Logic and LSI Corporation ("LSI"). This portfolio reflects technology that underlies many important innovations in the development of semiconductors and integrated circuits for high–tech products, including smartphones, computers, wearables, digital signal processors, IoT devices, automobiles, broadband carrier access, switches, network processors, and wireless connectors.

6. The principals of Bell Semiconductor all worked at Bell Labs' Allentown facility, and have continued the rich tradition of innovating, licensing, and helping the industry at large since those early days at Bell Labs. For example, Bell Semiconductor's CTO was an LSI Fellow and Broadcom Fellow. He is known throughout the world as an innovator with more than 300 patents to his name, and he has a sterling reputation for helping semiconductor fabs improve their efficiency. Bell Semiconductor's CEO took a brief hiatus from the semiconductor world to work with Nortel Networks in the telecom industry during its bankruptcy. His efforts saved the pensions of tens of thousands of Nortel retirees and employees. In addition, several Bell Semiconductor executives previously served as engineers at many of these companies and were personally involved in creating the ideas claimed throughout Bell Semiconductor's extensive patent portfolio.

7. On information and belief, Kioxia America is a corporation organized and existing under the laws of California with its principal place of business and headquarters at 2610 Orchard Parkway, San Jose, California 95134. Kioxia America

has a registered agent for service of process at 28 Liberty Street, New York, NY 10005.

8. On information and belief, Kioxia Japan is a corporation organized and existing under the laws of Japan with its principal place of business at 3-1-21, Shibaura, Minato-ku, Tokyo 108-0023, Japan. On information and belief, Kioxia America is a wholly-owned subsidiary of Kioxia Japan.

9. On information and belief, Kioxia develops, designs, and/or manufactures products in the United States, including in this District, that use the structures and/or methods of the Asserted Patents; and/or use structures and/or methods of the Asserted Patents in the United States, including in this District, to make products; and/or distribute, market, sell, or offer to sell in the United States and/or import products into the United States, including in this District, that were manufactured using the patented methods or include the patented structures. Additionally, Kioxia introduces those products into the stream of commerce knowing that they will be sold and/or used in this District and elsewhere in the United States.

## JURISDICTION AND VENUE

10. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

11. This Court has personal jurisdiction over Defendants under the laws of the State of California, due at least to their substantial business in California and in this District. Defendants have purposefully and voluntarily availed themselves of the privileges of conducting business in the United States, in the State of California, and in this District by continuously and systematically placing goods into the stream of commerce through an established distribution channel with the expectation that they will be purchased by consumers in this District. In the State of California and in this District, Defendants, directly and/or through intermediaries: (i) perform at least a portion of the infringements alleged herein; (ii) develop, design, and/or manufacture

1 products according to claims of each Asserted Patent; (iii) distribute, market, sell, or offer to sell products that embody each Asserted Patent; and/or (iv) import products formed according to the '269 patented processes/methodologies and/or the structures of the other Asserted Patents.

12. On information and belief, Kioxia Japan directs the activities of Kioxia America. On information and belief, Kioxia Japan has access to and uses the facilities of Kioxia America for its own benefit in conducting business in the United States, the State of California, and this District such that the places of business of Kioxia America are also places of business of Kioxia Japan.

13. On information and belief, venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400 with respect to Kioxia because Kioxia has committed, and continues to commit, acts of infringement in this District (including, but not limited to, offers for sale and, on information and belief, sales of Kioxia Accused Products) and has a regular and established place of venue in this district, including its sales office at 5231 California Ave., Irvine, CA 92617. On information and belief, Kioxia employs at least 65 people in this District, including intellectual property counsel, engineers, and corporate executives and directors. (*See* https://www.linkedin.com/search/results/people/?currentCompany=%5B%2228493031%22%5D&geoUrn=%5B%22100657539%22%2C%2290000049%22%2C%22102448103%22%5D&origin=FACETED_SEARCH&sid=7BK, last visited November 16, 2022.)

14. Venue is also convenient for all parties in this District. This is at least true because of this District's close ties to this case—including the technology, relevant witnesses, and sources of proof noted above—and its ability to quickly and efficiently move this case to resolution.

## U.S. PATENT NO. 8,049,340

15. Bell Semiconductor owns by assignment the entire right, title, and interest in the '340 patent, entitled "Device for Avoiding Parasitic Capacitance in an Integrated Circuit Package," which issued on November 1, 2011.

16. The '340 patent issued to inventors Jeffrey Hall, Shawn Nikoukary, Amar Amin, and Michael Jenkins from United States Patent Application No. 11/277,188, filed March 22, 2006. A true and correct copy of the '340 patent is attached as Exhibit A.

17. The '340 patent is directed to solving the problem of signal deterioration in integrated circuits such as a serializer/deserializer. At high frequencies, "the parasitic capacitance between transmit (Tx) and receive (Rx) contact pads in the contact pad layer and nearby metal layers of the integrated circuit package may result in a deterioration of the signal waveform and a correspondingly reduced circuit performance." Ex. A at 2:52-60.

18. Parasitic capacitance results when parts in an electronic circuit are proximate one another, potentially leading to interference with the input or output to a device. Reducing parasitic capacitance has become increasingly necessary as integrated circuit devices, particularly high-speed devices, have included more external connections.

19. The '340 patent identifies the shortcomings of the prior art. More specifically, the specifications describe that "metal layers that have a relatively large metal area may produce significant parasitic capacitance." Parasitic capacitance between, e.g., the ball pad and the routing metal layer or between the underlying ball pad and the ground return metal layer can produce "distortion of the switching waveform of high-frequency signals used, for example, in serializing/deserializing devices (SERDES). As a result, the maximum operating frequency that may be used in the integrated circuit is disadvantageously limited . . . ." *Id.* at 3:21-25.

20. To reduce parasitic capacitance in the multi-layer packages, the '340 patent teaches the use of cutouts over the electrical contacts in electrically conductive layers to substantially avoid overlap between the electrical contacts and metal in the electrically conductive layers.

21. The '340 patent contains 3 independent claims and 19 total claims, covering an integrated circuit substrate. Claim 1 reads:

> 1. An integrated circuit package substrate comprising:
>
>> a first and a second electrically conductive layer separated from each other by an electrically insulating layer with no intermediate conductive layer therebetween;
>>
>> a plurality of rows of contact pads formed in the first electrically conductive layer for making a direct connection between the integrated circuit package substrate and a printed circuit board; and
>>
>> a plurality of cutouts formed in the second electrically conductive layer for reducing parasitic capacitance between the second electrically conductive layer and the first electrically conductive layer,
>>
>> wherein each cutout encloses an electrically insulating area within the second electrically conductive layer, and
>>
>> wherein each electrically insulating area completely overlaps a corresponding one of the contact pads formed in the first electrically conductive layer such that there is substantially no overlap of the rows of contact pads with metal in the second electrically conductive layer.

22. Claim 2 reads:

> 2. The integrated circuit package substrate of claim 1 further comprising transmit and receive rows of ball pads as the contact pads operable with the second electrically conductive layer for converting a serial data stream to or from a parallel data stream, the second electrically conductive layer being a routing layer including routing traces, the cutouts being arranged in rows corresponding to the rows of ball pads.

6

ORIGINAL COMPLAINT

23. Claim 2, as a whole, provides significant benefits and improvements to the function of the semiconductor device, e.g., increasing the maximum operating frequency that may be used in integrated circuits relative to prior art designs.

## U.S. PATENT NO. 8,288,269

24. Bell Semiconductor owns by assignment the entire right, title, and interest in the '269 patent, entitled "Methods for Avoiding Parasitic Capacitance in an Integrated Circuit Package," which issued on October 16, 2012.

25. The '269 patent issued to inventors Jeffrey Hall, Shawn Nikoukary, Amar Amin, and Michael Jenkins from United States Patent Application No. 13/252,632, filed October 4, 2011. A true and correct copy of the '269 patent is attached as Exhibit B.

26. The '269 patent is related to and shares an identical specification with the '340 patent. Where the '340 patent claims apparatuses for minimizing parasitic capacitance, the '269 patent claims methods for directed to the same general problem. More particularly, in order to reduce parasitic capacitance in the multi-layer packages, the '269 patent teaches the use of cutouts over the electrical contacts in electrically conductive layers to eliminate substantial overlap between the electrical contacts and metal in the electrically conductive layers.

27. The '269 patent contains 2 independent claims and 20 total claims, covering an integrated circuit substrate. Claim 1 reads:

> 1. A method, comprising steps of:
>
> forming a first electrically conductive layer including a plurality of rows of contact pads;
>
> forming an electrically insulating layer on the first electrically conductive layer; and
>
> forming a second electrically conductive layer over the electrically insulating layer such that there is no intermediate conductive layer between the first and second electrically conductive layers, the second electrically conductive layer comprising metal and a plurality of cutouts wherein each

7

cutout encloses an electrically insulating area within the second electrically conductive layer and wherein each electrically insulating area completely overlaps a corresponding one of the contact pads such that there is substantially no overlap of the rows of contact pads with metal in the second electrically conductive layer.

28. Claim 2 reads:

2. The method of claim 1, further comprising:

forming the contact pads as transmit and receive rows of contact pads;

forming the second electrically conductive layer as a routing layer including routing traces such that the contact pads are operable with the second electrically conductive layer for converting a serial data stream to or from a parallel data stream; and

forming the cutouts in rows corresponding to and aligned with the rows of contact pads.

29. Similar to the '340 patent, this claim, as a whole, provides significant benefits and improvements to the function of the semiconductor device, e.g., increasing the maximum operating frequency that may be used in integrated circuits relative to prior art designs

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,049,340 (KIOXIA)

30. Bell Semiconductor re-alleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

31. The '340 patent is valid and enforceable under the United States patent laws.

32. Bell Semiconductor owns, by assignment, all right, title, and interest in and to the '340 patent, including the right to collect for past damages.

33. On information and belief, Kioxia has and continues to directly infringe, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(a) one

or more claims of the '340 patent by making, using, offering to sell, and/or selling within the United States, or importing into the United States, one or more semiconductor devices, including as one example the or importing into the United States, one or more semiconductor devices, including as one example the Kioxia TC58NC1132GTC, and products containing the Kioxia TC58NC1132GTC.

34. A claim chart demonstrating Kioxia's infringement of the '340 patent is attached hereto as Exhibit C.

35. Kioxia's Accused Products infringed and continue to infringe one or more claims of the '340 patent during the pendency of the '340 patent.

36. Kioxia's infringement of the '340 patent was, and continues to be, done with knowledge of the '340 patent and with knowledge of Bell Semiconductor's contention that Kioxia is infringing the '340 patent. On June 3, 2022, a representative of Bell Semiconductor provided actual notice to Kioxia of the '340 patent. Kioxia's infringement of the '340 patent is thus willful and deliberate, entitling Bell Semiconductor to enhanced damages and attorneys' fees.

37. Kioxia's infringement of the '340 patent is exceptional and entitles Bell Semiconductor to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

38. Bell Semiconductor has been damaged by Kioxia's infringement of the '340 patent and will continue to be damaged unless Kioxia is enjoined by this Court. Bell Semiconductor has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors Bell Semiconductor, and public interest is not disserved by an injunction.

39. Bell Semiconductor is entitled to recover from Kioxia all damages that Bell Semiconductor has sustained as a result of Kioxia's infringement of the '340 patent, including without limitation and/or not less than a reasonable royalty.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,288,269
## (KIOXIA)

40. Bell Semiconductor re-alleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

41. The '269 patent is valid and enforceable under the United States patent laws.

42. Bell Semiconductor owns, by assignment, all right, title, and interest in and to the '269 patent, including the right to collect for past damages.

43. On information and belief, Kioxia has and continues to directly infringe, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(a) one or more claims of the '269 patent by making, using, offering to sell, or selling within the United States, or importing into the United States, one or more semiconductor devices, including as one example the Kioxia TC58NC1132GTC, and products containing the Kioxia TC58NC1132GTC.

44. A claim chart demonstrating Kioxia's infringement of the '269 patent is attached hereto as Exhibit D.

45. Kioxia's Accused Products infringe and continue to infringe one or more claims of the '269 patent during the pendency of the '269 patent.

46. Kioxia's infringement of the '269 patent was, and continues to be, done with knowledge of the '269 patent and with knowledge of Bell Semiconductor's contention that Kioxia is infringing the '269 patent. On March 26, 2020, a representative of Bell Semiconductor provided actual notice to Kioxia of the '269 patent. Kioxia's infringement of the '269 patent is thus willful and deliberate, entitling Bell Semiconductor to enhanced damages and attorneys' fees.

47. Kioxia's infringement of the '269 patent is exceptional and entitles Bell Semiconductor to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

ORIGINAL COMPLAINT

48. Bell Semiconductor has been damaged by Kioxia's infringement of the '269 patent and will continue to be damaged unless Kioxia is enjoined by this Court. Bell Semiconductor has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors Bell Semiconductor, and public interest is not disserved by an injunction.

49. Bell Semiconductor is entitled to recover from Kioxia all damages that Bell Semiconductor has sustained as a result of Kioxia's infringement of the '269 patent, including without limitation and/or not less than a reasonable royalty.

## **PRAYER FOR RELIEF**

WHEREFORE, Bell Semiconductor respectfully requests that this Court enter judgment in its favor as follows and award Bell Semiconductor the following relief:

(a) a judgment declaring that each Defendant has, infringed one or more claims of the Asserted Patents in this litigation pursuant to 35 U.S.C. § 271, *et seq.*;

(b) an award of damages adequate to compensate Bell Semiconductor for infringement of the Asserted Patents by each Defendant, respectively, in an amount to be proven at trial, including supplemental post-verdict damages until such time as each Defendant ceases its infringing conduct;

(c) a permanent injunction, pursuant to 35 U.S.C. § 283, prohibiting each Defendant and its officers, directors, employees, agents, consultants, contractors, suppliers, distributors, all affiliated entities, and all others acting in privity with said Defendant, from committing further acts of infringement;

(d) a judgment requiring each Defendant to make an accounting of damages resulting from its infringement of the respective Asserted Patents;

(e) enhanced damages for willful infringement;

(f) the costs of this action, as well as attorneys' fees as provided by 35 U.S.C. § 285;

(g) pre-judgment and post-judgment interest at the maximum amount permitted by law;

(h) all other relief, in law or equity, to which Bell Semiconductor is entitled.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all issues so triable.

Dated: November 23, 2022

By: /s/Alex Chan
Alex Chan (SBN 278805)
DEVLIN LAW FIRM LLC
16219 Flamstead Drive
Hacienda Heights, CA 91745
Telephone: (646) 331-0604
Facsimile: (302) 353–4251
achan@devlinlawfirm.com

*Attorney for Plaintiff Bell Semiconductor, LLC*

Exhibits:
- Ex. A – '340 patent
- Ex. B – '269 patent
- Ex. C – '340 Claim Chart
- Ex. D – '269 Claim Chart